## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GREGORY HAYNES, an Individual,** **Plaintiffs,** **v.** **FAIRVIEW AVENUE PROPERTIES LLC, an Illinois Limited Liability Company, TCF NATIONAL HOLDINGS, INC., a Delaware Corporation, MON AMI TCF LLC, an Illinois Limited Liability Company, MARCIN CHOJNACKI, an Individual, LAURENA MIKOSZ a/k/a LORI MIKOSZ, an Individual, KATHLEEN LONG, an Individual, CHASE REAL ESTATE, LLC, an Illinois Limited Liability Company, MIDWEST TITLE AND CLOSING SERVICES LLC an Illinois Limited Liability Company, MAINSTREET PROPERTY MANAGEMENT LLC, an Illinois Limited Liability Company, EJ INVESTMENT GROUP INC. a Delaware Corporation, ANAND SHETH, an Individual, CITYPOINT ILLINOIS LLC an Illinois Limited Liability Company, and RACHEL IRWIN, an Individual.** **Defendants.** | **Case No.** **Judge:** **Magistrate:** |

## COMPLAINT

NOW COMES the Plaintiff, GREGORY HAYNES by and through his attorneys, GASPERO & GASPERO, ATTORNEYS AT LAW, P.C., and in complaining against MARCIN CHOJNACKI, LAURENA MIKOSZ a/k/a LORI MIKOSZ, KATHLEEN LONG, CHASE REAL ESTATE, LLC, an Illinois Limited Liability Company, MIDWEST TITLE AND CLOSING SERVICES LLC, an Illinois Limited Liability Company, MAINSTREET PROPERTY MANAGEMENT LLC, an Illinois Limited Liability Company, EJ INVESTMENT GROUP INC., a Delaware Corporation, TCF NATIONAL HOLDINGS, INC. , a Delaware Corporation, FAIRVIEW AVENUE PROPERTIES LLC, an Illinois Limited Liability Company, MON AMI TCF LLC, an Illinois Limited Liability Company, ANAND SHETH, and RACHEL IRWIN, allege as follows:

## JURISDICTION

This Court has jurisdiction over this action pursuant to 28 U.S. Code § 1332(a)(1) whereas the Plaintiffs are citizens of the State of California, and the Defendants are citizens of Illinois and Delaware. The amount in controversy, exclusive of costs, exceeds $75,000.

This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964.

## VENUE

Venue is proper in this District pursuant 18 U.S.C. § 1965 and 28 U.S. Code § 1391(c)(2), whereas multiple Defendants are residents of Illinois and the real estate at issue is located in Illinois.

Venue is proper in this District pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this judicial district and reside in this district.

## PARTIES

1.      Plaintiff GREGORY HAYNES ("Haynes"), an individual, is a California resident.

2.      Defendant MARCIN CHOJNACKI ("Chojnacki"), an individual, is an Illinois licensed real estate broker and an Illinois resident.

3.      Defendant ANAND SHETH ("Sheth"), an individual, is an Illinois resident.

4.      Defendant LAURENA MIKOSZ a/k/a LORI MIKOSZ ("Mikosz"), an individual, is an Illinois licensed real estate broker and an Illinois resident.

5.      Defendant RACHEL IRWIN, an individual, is an Illinois resident and an attorney licensed to practice law in the State of Illinois.

6.      Defendant FAIRVIEW AVENUE PROPERTIES LLC is an Illinois Limited Liability Company managed by MON AMI TCF LLC., an Illinois Limited Liability Company.

7.      Defendant MON AMI TCF LLC comprised of sole members Defendant LONG and Defendant SHETH and is managed by Defendant Sheth.

8.      Defendant TCF NATIONAL HOLDINGS, INC. is a Delaware Corporation managed and owned by KATHLEEN LONG.

9.      Defendant KATHLEEN LONG, an individual, is an Illinois and, on information and belief, is the paramour and roommate of CHOJNACKI.

10.     Defendant EJ INVESTMENT GROUP INC. is a Delaware Corporation controlled by Defendants CHOJNACKI and RIXER.

11.     Defendant CHASE REAL ESTATE, LLC ("Chase Real Estate") is an Illinois LLC.

12.     Defendant MIDWEST TITLE AND CLOSING SERVICES LLC ("Midwest Title") is an Illinois Limited Liability Company.  Midwest is managed by XYZABC, Inc., a Delaware Corporation.

13.     Defendant RACHEL IRWIN ("Irwin) is the President and Director of XYZABC, Inc.

14.     Defendant Irwin is an attorney licensed to practice law in Illinois.  Rachel Irwin is employed by and is the Manager of Midwest Title.   Irwin is also the General Counsel and Illinois registered agent of EJ INVESTMENT GROUP INC. and Defendant MAINSTREET PROPERTY MANAGEMENT LLC.

15.     Defendant Midwest Title provides real estate transaction services and serves as the registered agent of Defendants Fairview Avenue Properties LLC and TCF National Holdings, Inc.

16.     Defendant MAINSTREET PROPERTY MANAGEMENT ("Mainstreet Management") is an Illinois Limited Liability Company managed by EJ INVESTMENT GROUP INC. ("EJ Investment Group").

17.     Defendant CITYPOINT ILLINOIS LLC is an Illinois Limited Liability Company.

18.     CITIPOINT PROPERTIES LLC appears to have been an un-incorporated enterprise organized by CHOJNACKI which held itself out as a real estate investment company for the purposes of inducing and capitalizing from out-of-state investors in connection with Illinois real estate.  On December 28, 2022 this un-incorporated enterprise organized itself as

"CITYPOINT ILLINOIS LLC" a Delaware Corporation. The allegations set forth herein cover time periods when this enterprise was both un-incorporated and incorporated.

19.     Defendants IRWIN, CHOJNACKI, MIKOSZ, MAINSTREET MANAGEMENT, AND EJ INVESTMENT GROUP all operate out of the same office space located at 25-41 E. Main Street Suite 204, Roselle, IL 60172.

## ALLEGATIONS COMMON TO ALL COUNTS

20.     Plaintiff is a retiree residing California and was looking to invest in real estate to provide a steady source of income during his retirement.

21.     Beginning on December 21, 2021, Defendant Fairview Avenue Properties LLC ("12442 Fairview" and "12430 Fairview") was the owner of real estate commonly known as 12430 Fairview Ave., Blue Island, Illinois and 12442 Fairview Ave., Blue Island Illinois.

22.     Defendant Fairview Properties is indirectly owned and controlled by Defendant Long, Chojnacki's paramour and roommate and Defendant Sheth.

23.     In October 2021, Plaintiff Haynes responded to a social media (Instagram) advertisement ("The Initial Ad") inviting the reader to contact "CitiPoint Properties" which identified itself as a source for connecting investors to undervalued and underperforming properties – carrying the promise of rapidly increasing equity and high cash flow.  This alleged connection between the target investor and the alleged owner of "off-market" properties was referred to as "directly sourced" properties.

24.     Haynes sent a query to "CitiPoint" in response to the Instagram advertisement.

25.     Haynes's query prompted a response from Defendant Mikosz.

26.     The response from Mikosz evolved into a sustained interaction through which Mikosz drew Haynes into the scheme.  Mikosz told Haynes that her company reaches out to

"mom and pop" apartment building owners to learn if they are interested in selling their properties and then introduces the properties to the investors. She said that primarily her investors are out-of-state buyers, mainly California.

27.     She further stated that she was affiliated with a property management company that would help the new owner as the property manager, namely "Mainstreet Management."

28.     Haynes was assured that if he invested, he would be purchasing a building that was underperforming due to the fact that it was owned and self-managed by a local landlord.

29.     The purported fact that the property was owned and self-managed by a local unprofessional landlord prompted Mikosz to foster the proposition that 1) the property could be acquired from the local individual at a bargain price and 2) once the property was managed properly (with the help of Mikosz's affiliate property management company), the investor (Haynes) could expect substantial cash flow.

30.     Mikosz scheduled a conference call with Haynes, herself, and Chojnacki, whom she introduced as a Chase Broker (Mikosz's managing broker) and principal of the property management company (Main Street Management). The purpose of the call, according to Mikosz, was to "welcome Haynes to the CitiPoint family."

31.     In that "welcome" call, Mikosz and Chojnacki told Haynes they had a full team including lenders, building managers, maintenance, insurance and lawyers that would help Haynes "be a successful real estate investor."

32.     Mikosz and Chojnacki actively led Haynes to believe that since they were agents of Chase Real Estate that the transaction would be safely negotiated and consummated under the auspices of Chase Real Estate.

33.     Mikosz and Chojnacki's e-mail correspondence with Haynes were sent through their e-mails at Chase Real Estate with the addresses lori.mikosz@mychaseagent.com and marcin.chojnacki@mychaseagent.com.

34.     At all times relevant herein, the website for CitiPoint was a virtual reflection of the website for Chase Real Estate (See printed copy of the CitiPoint website as of January 27, 2023 attached as Exhibit 1 and the Chase Real Estate Website at Exhibit 2 as of the filing hereof). Both websites were significantly revised prior to and since the attached captures. Prior to the revisions and at the times relevant to the facts alleged herein, the websites were of the same design motif and were nearly identical to each other.

35.     Mikosz and Chojnacki actively led Plaintiff to believe that since they were agents of Chase Real Estate, and because "CitiPoint" is affiliated with Chase Real Estate, that the transactions would be safely negotiated and consummated under the auspices of Chase Real Estate with Mikosz and Chojnacki as Haynes's brokers and representatives.

36.     Subsequently, Mikosz sent Haynes a link to three properties she had currently listed that she thought would be suitable for Haynes.

37.     From the list of three properties Mikosz sent Haynes, he inquired about two: 12430 Fairview Ave., Blue Island, Illinois and 12442 Fairview Ave., Blue Island, Illinois ("Fairview 12430" and "Fairview 12442" Collectively the "Properties").

38.     Mikosz told Haynes that the Properties were owned by an "old couple" with limited property management skills.

39.     Mikosz represented that the Properties were in good condition and that the Properties were fully leased with tenants who were all current in rent – with the exception of one vacant unit in one of the properties that needed a very small amount of work.  Mikosz provided

Haynes and his lender with a cash flow analysis supporting the proposition that the Properties would be profitable at the purchase price of $900,000 together.

40. As for the one vacant unit in one of the Properties that needed a small amount of work, Mikosz said she was affiliated with a team of contractors who do quality work and that these contractors would be able to complete the work on the vacant unit for around $3,000.00. She also said the small amount of work could be done very quickly so that the unit could be rented right away.

41. Contrary to her representations, Mikosz had actual knowledge that Defendants were actively engaged in purchasing the Properties from someone else for themselves and were then going to sell them to Haynes for a greatly inflated price.

42. In fact, contrary to her representations, Mikosz had actual knowledge at the time that the Properties were not "fully leased except for one vacant unit" at the time these representations were made to Haynes.

43. Contrary to her representations, Mikosz had actual knowledge at the time that the Properties were not in good condition and in fact had active building violations.

44. Contrary to her representations, Mikosz had actual knowledge at the time that the Properties would not be profitable at the purchase price of 900,000.

45. Despite this actual knowledge to the contrary, Mikosz kept this information secret from Haynes.

46. Mikosz told Haynes that, as his broker, she could write the offer for the Properties and act on his behalf for his purchase from this "mom and pop" seller.

47. Based on Mikosz's representations, at all times herein, Haynes believed Mikosz and, Chojnacki as Mikosz's managing broker, were acting as his agent in the subject transaction.

8

48.     Based upon Mikosz and Chojnacki's representations, Haynes agreed to have Mikosz submit the offer for the Properties.

49.     Based on Chojnacki's and Mikosz's representations, Haynes entered into a contract to purchase the Properties on October 16, 2021 (See Contracts attached as Exhibit 3). On the contract, Defendant TCF National Holdings, Inc. (Long's company) is specified as Seller. Haynes is specified as Buyer.

50.     Throughout the negotiations, Mikosz and Chojnacki continued to identify themselves as Haynes' agents and representatives.  They continued to represent to Haynes that the counterparties on the transaction would be the long-standing owners of the Properties who were located by CitiPoint to connect them to investors such as Haynes.

51.     However, Mikosz actually was an affiliate, was employed by, and/or was an agent of Chojnacki and his roommate and paramour Long (who were secretly contracting to purchase the Properties themselves that Mikosz was offering to Haynes before selling it to Haynes at a greatly inflated price).

52.     During the due diligence period, Haynes told Mikosz that he wanted to be present for the property inspections.

53.     Mikosz insisted to Haynes that this was not necessary.  Mikosz said she would arrange all the inspections and he did not need to be there.  She assured him that she, as his agent, would be present during the inspections and act on his behalf.

54.     Although Mikosz insisted on the inspections going forward without Haynes being present, Haynes still told Mikosz he wanted to hold off on doing the inspections until he could be there.

55.     Haynes was communicating with Mikosz on a regular basis regarding the transaction, believing that she was his agent.  Accordingly, notwithstanding Mikosz's assurances, Haynes told Mikosz he still was going to fly from California to Illinois to be present during the inspection and also to see the Properties himself.

56.     Accordingly, in November 2021, as he had planned, and as he had told Mikosz, Haynes traveled from California to Illinois to see the buildings and watch the inspections.

57.     On the day of the inspections, Haynes went to Mikosz's office.

58.     Although Mikosz was aware that Haynes was flying from California to Illinois to see the buildings, Mikosz told him when he arrived that he would only have limited access to the Properties.  She explained that "a mix-up" had occurred.  She also advised him that he would not be granted access to the inside of the units as this "mix-up" had caused the tenants to not be "properly notified" of his inspection.

59.     However, Mikosz reassured Haynes that he did not need to worry as she herself, as his agent, had previously viewed the inside of the units.  She assured Haynes that there were no significant issues with the inside of the units.

60.     Mikosz also pressured Haynes that these properties "sell fast" and that he "should not wait" to see the units.

61.     Mikosz told Haynes that her inspector was there to help make sure there were no "major" issues with the buildings.

62.     Haynes then walked around the buildings with Mikosz's inspector.  Haynes and Mikosz's inspector viewed the laundry room and the boiler room.  Mikosz's inspector told Haynes that the roof, boiler, water heater, exterior bricks, and electrical all looked good.

Mikosz's inspector said because these major items were in good order, Haynes should not be worried about the fact that he was not able to view the inside of the units.

63.     Haynes then went back to Mikosz's office where Chojnacki was also present. Chojnacki again held himself out to be Mikosz's managing broker, which made Haynes again believe that Chojnacki was acting on Haynes's behalf as well.

64.      Chojnacki again discussed all of his successful real estate ventures and further described himself as the overseer of the property management company (later learned to be Defendant Main Street Property Management, LLC).

65.     Haynes again told Chojnacki and Mikosz that he wanted to have a full inspection and also see inside the units.  He told Mikosz that he would be in Chicago for four days and that should be enough time for the tenants to be notified.  But Mikosz told Haynes that four days was not enough notice and again reassured him that an inspection of the units was not necessary as she, his agent, had personally been inside each of the units and that they were all in good condition.

66.     Mikosz and Chojnacki again warned Haynes that properties "sell fast" and that he did not need to see the inside of the units since Mikosz and Chojnacki had seen the inside of the units and there were no issues, and also since the inspector had already confirmed the buildings were "solid" and without any major issues.

67.     They also again reiterated the misstatement that Haynes was purchasing the Properties from a "mom and pop" seller who had maintained the Properties well.

68.     Throughout this meeting, and at all times relevant herein, Mikosz and Chojnacki described themselves to Haynes as his agents and representatives and agent in the transaction.

69.     It was untrue that a "mix-up" occurred. The truth was that at the time of Haynes inspection in November 2021, Defendants were clandestinely in the process of purchasing the Properties for themselves for $600,000 -- $300,000 less than what they had fraudulently induced Plaintiff to pay.

70.     Thus, the real reason Mikosz and Chojnacki were not able to allow Haynes to fully see the buildings was because they and their affiliated defendants were under contract to buy the Properties for themselves. Haynes was a stranger to the transaction. He had no right see the Properties because he was not a counterparty in contract with the then-current owners.

71.     It wasn't until December 21, 2021 that Chojnacki, Long, Sheth and the affiliated Defendant entities actually closed on the Properties (one month after Haynes' inspection attempt).

72.     In any case, at the time the inspection attempt, the Properties were in a categorical state of distress – with many vacant units and units in significant disrepair which rose to the level of known code violations.

73.     Defendants did not disclose to Haynes that they were engaged in their own purchase of the Properties at the time of the November 2021 inspection.

74.     Defendants did not disclose to Haynes that they were secretly purchasing these properties for $600,000 in order to sell them to him for $900,000.

75.     Defendants knew they had a conflict of interest and did not disclose this conflict of interest to Haynes.

76.     Defendants knew their representations to Haynes were false.

77.     Defendants knew it was wrong to fail to disclose their conflicts of interest to Haynes.

78.     Haynes trusted and relied upon Defendants' representations.

79.     Defendants Mikosz and Chojnacki, throughout the transaction, continued to represent to Haynes that the buildings were in good condition, and needed only one small repair to one unit for approximately $3,000.00.

80.     Defendants Mikosz and Chojnacki, throughout the transaction, continued to represent to Haynes that the Properties were fully rented with tenants who were current in their rent, with the exception of one unit.

81.     Defendants knew their occupancy and condition representations were untrue not only because Defendant Long, Defendant Chojnacki's roommate and paramour controlled the puppet entity that owned the Properties, but also because Defendant Chojnacki's management company, Main Street Property Management, was managing the property.

82.     Throughout the transaction, Mikosz and Chojnacki continued to shield the fact that the seller was actually an entity controlled by Defendant Chojnacki's paramour and roommate Defendant Long.  Chojnacki and Mikosz continued to shield the fact that Mikosz and Chojnacki were actually agents and affiliates of the seller.

83.     In February 2022, Haynes and Defendants TCF National Holdings and Fairview Avenue Properties closed the Contract at which time Haynes, through his LLC, acquired title to the 12430 Fairview and 12442 Fairview Properties at the purchase price of $900,000. (Although Defendant TCF National Holdings was the Contract Seller, the Grantor on the Deed was Fairview Avenue Properties).

84.     Contrary to the representations of Defendants, Defendants (via Defendant Sheth and Long's LLC) had previously purchased 12430 Fairview and 12442 Fairview on December 21, 2021.

85.     The Seller to Haynes was not "an old couple who had owned the buildings a long time," contrary to the representations of Defendants Mikosz and Chojnacki.

86.     The false promise that the Property was owned and self-managed by a local, unprofessional landlord (the "mom and pop") allowed Mikosz and Chojnacki to foster the proposition that 1) the Property could be acquired from the local individual at a bargain price and 2) once the Property was managed properly (with the help of Chojnacki's affiliate property management company, Mainstreet Management), the investor (Haynes) could expect substantial cash flow.

87.     Contrary to their representations, Mikosz and Chojnacki had actual knowledge that the 12442 Fairview and 12430 Fairview properties were not a "bargain" at their purchase price of $900,000, because it had been acquired by Chojnacki's paramour and roommate Long in January 2022 – indeed during their negotiations with Haynes - for $600,000.00.

88.     Prior to the closing, the Defendants provided Haynes and his Lender with a rent-roll for the Property delineating the units, the tenants, and the security deposits.  Defendants represented to Haynes that the Property was fully leased (but for one unit) and that the remaining units were occupied by tenants who were current in their rent. See the Rent Roll attached as Exhibit 4.

89.     The Rent Roll at Exhibit 4 was a fabrication.  The Property was not fully occupied and/or rents were not anywhere near being current as stated.

90.     At all times herein, Defendant Irwin was acting as an agent of Defendant Midwest Title and of Fairview Avenue Properties LLC.

91.     Midwest Title through its agent Irwin plays a significant role in the transactions by providing registered agent services to the various puppet entities, housing various legal

operations appurtenant to the entities and transactions, as well as charging the Plaintiff for some unspecified services described in the closing statement as "Closing Coordination Fee." Defendant Irwin also signs the deeds in the subject transactions on behalf of "seller."

92.     As stated above, Defendants Irwin, Chojnacki, Mikosz, Midwest Title, EJ Investment Group and Mainstreet Management are all located at and operate out of the same office space.

93.     Defendants Chojnacki, Long, and Mikosz made misrepresentations to Haynes to induce him to consummate the subject transactions.

94.     Defendants Mainstreet Management, acting through Defendant Chojnacki and Defendants Fairview Avenue Properties LLC, fraudulently misrepresented the condition of the Properties to Haynes.

95.     Contrary to the representations of Defendants, Haynes learned that many of his units in the Fairview Properties were vacant and some uninhabitable.

96.     Contrary to the representations of Defendants, Haynes learned that the Defendants did not comply with the Blue Island inspection and real estate transfer requirements as required by Blue Island Ordinances.  The City of Blue Island had been directing building code violations at the Defendants prior to the transaction.

97.     Defendants' misrepresentations as to violations and failure to comply with Blue Island real estate transfer inspection and approval requirements resulted in fines and/or citations to Haynes.

98.     Due to the numerous tenants not paying rent, it is necessary to proceed with numerous eviction proceedings for the subject properties.

99.    Despite the Properties being noncompliant with Blue Island ordinances, and despite both properties having vacancies and uninhabitable units, Defendants, through their property management company Mainstreet, have charged Haynes for enormous and repeating unidentified charges, and have withheld and/or otherwise refused to have any tenant funds received turned over to Haynes.

100.    Defendants have attempted to induce Haynes to repeat the scam with additional properties offered by the Defendants.

101.    Defendants have treated other individuals or entities in the same illegal manner alleged by Haynes.  There are four known specific additional individuals and/or entities who were similarly defrauded by precisely or nearly precisely the same pattern of artifices and fraudulent misrepresentations as set forth in this Complaint.

102.    The Defendants are, at present, continuing to lure investors into the enterprise using the same scheme and under the same guises as those set forth herein. Accordingly, the conduct alleged herein constitutes the Defendants' regular method of conducting their business.

**COUNT I:  RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO) - 18 U.S.C. 1962(c), (d)**

**(Defendants Chojnacki, Mikosz, Long, Citypoint Illinois LLC, Fairview Avenue Properties LLC, TCF National Holdings, Inc.)**

Plaintiffs Haynes re-states and re-alleges Paragraphs 1 through 102 as though fully stated herein.

**RICO Persons**

103.    Defendants Chojnacki, Mikosz, Long, Sheth, Fairview Avenue Properties LLC, Citypoint Illinois LLC, Mainstreet Property Management LLC, TCF National Holdings, Inc., and

Mon Ami TCF LLC, are each capable of holding a legal or beneficial interest in property, and therefore each is a "person" within the meaning of 18 U.S.C. § 1961(3).

## The Rico Enterprise

104.     Defendants Chojnacki, Mikosz, Long, Sheth, Fairview Avenue Properties LLC, Citypoint Illinois LLC, Mainstreet Property Management, LLC, TCF National Holdings, Inc., and Mon Ami TCF LLC, were associated in fact, and constituted an "enterprise" as that term is defined in Title 18, United States Code, Section 1961(4), which enterprise was engaged in, and the activities of which affected, interstate commerce. This enterprise shall be referred to herein as the "CitiPoint Enterprise."

105.     The CitiPoint Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

106.     The primary purpose of the CitiPoint Enterprise was to lure and then fleece unsuspecting real estate investors for the financial benefit of CitiPoint.

107.     For the purpose of 18 U.S.C. § 1962(c), and during the periods relevant to this complaint, Defendants Chojnacki and Mikosz each had authority within the CitiPoint Enterprise, and/or conducted or participated, directly or indirectly, in the conduct of the CitiPoint Enterprise's affairs through the pattern of racketeering activity described herein.

## Effect on Interstate Commerce

108.     The CitiPoint Enterprise conducted its racketeering activity, in part, using the interstate mails and wire communications, including by use of the telephones, by electronic transfers of funds, and through the mailing of checks.

17

## Predicate Acts of Racketeering Activity

109. Through the CitiPoint Enterprise, or in conspiracy with it, the Defendants conducted, engaged in, and participated in a pattern of racketeering activity, consisting, at a minimum, of the following predicate acts: (a) multiple violations of Title 18, United State Code, Sections § 1341, 1343, and 1346 (mail fraud and wire fraud). The scheme to defraud was advanced, concealed or furthered by the use of the U.S. mail or wires.

110. Specifically, the Defendants' predicate acts include, but are not limited to, the following:

   a) In furtherance of a scheme or artifice to defraud as defined in 18 U.S.C. §§ 1341 & 1346, and with specific intent to defraud, Defendants placed ads on the Internet and on social media with the intent to induce investors to participate in "directly sourced" real estate opportunities when they actually intended to sell the duped investor their own significantly marked-up property.

   b) Engaging in a sustained fiction with the victim, replete with misrepresentations and calculated omissions to keep the investor misled that their transactional counterparty was an "old retiring couple" selling the property directly to the investor at bargain level pricing.

   c) Fabricating occupancy records of the property to mislead the investor with the falsehood that that property was fully-leased and the tenant payments were fully current.

   d) Concealing and misrepresenting known significant building code and occupancy violations from the investor with the intent of inducing the investor to enter into the transaction.

   e) Engaging in post-closing fraudulent activity in the management of the property by 1) continued concealment of and falsification of rent records; 2) continued concealment of building occupancy and code violations.

## Pattern of Racketeering Activity

111. The Defendants acted, and conspired to act together, and in association with others knowingly and repeatedly committed the above fraudulent acts in furtherance of and for

18

the purpose of enriching themselves financially and to otherwise further the ends of the CitiPoint Enterprise.

112.    The predicate acts described above were related to one another as part of a common scheme or plan.

113.    Such unlawful conduct constituted a continuous pattern of racketeering activity beginning as early as October 2021, continue through the present, and are likely to continue into the foreseeable future.

### Conspiracy (18 U.S.C. § 1962(d))

**(Defendants Midwest Title and Closing Services LLC, Sheth, Mon Ami TCF LLC, Irwin, EJ Investments, Inc., Mainstreet Property Management LLC and Chase Real Estate, LLC)**

114.    As described above, Defendants Midwest Title and Closing Services LLC, Irwin, EJ Investments, Inc., Chase Real Estate, LLC, did knowingly agree to facilitate the CitiPoint Enterprise Defendants, and those acting in concert with them, to violate 18 U.S.C. § 1962(c) for the purpose of achieving and profiting from the racketeering activities described above.

115.    In furtherance of that agreement, the Defendants knowingly and intentionally agreed and conspired to commit at least two of the predicate acts set forth above and they did so with the knowledge and intent that such acts were in furtherance of the foregoing pattern of racketeering.

116.    Specifically, the Defendants described herein were either affiliated or controlled by the CitiPoint Enterprise Defendants

117.    The Defendants described herein knowingly provided auxiliary services with respect to the marketing, negotiation, and transaction of real estate closing services which were necessary to and facilitated the accomplishment of the goals of the CitiPoint Enterprise.

19

118.     Defendant Chase Real Estate LLC provided the cover of a legitimate real estate brokerage enterprise, oversaw the conduct and behavior of Mikosz and Chojnacki, and received a commission from Fairview Avenue Properties LLC (the seller) notwithstanding the fact that at all relevant times herein, they held themselves out as Haynes' agent.

119.     Defendant Irwin is forming at least some of the layers of shell entities, providing misinformation about the real estate, acting as officers and/or principals for the enterprise's entities, and acting as their counsel in the negotiations and transactions wherein the real estate is conveyed to the investor, or in this matter, acts as counsel for the fictitious "ma and pa" couple.

### Injuries to the Plaintiff Business and Property

120.     As a direct and proximate cause of the described racketeering activities and violations of 18 U.S.C. § 1962(c), and the described conspiracy in violation of 18 U.S.C. § 1962(d), the Haynes has been injured in their business and property. The Defendants' racketeering activities caused Haynes to invest $900,000.00 in real estate which the Defendants had actual knowledge was worth far less and said racketeering activities directly resulted and were the proximate cause of the Haynes' loss of invested funds.

121.     The Defendants' racketeering activities further caused Haynes' substantial damages due to the fact that the Properties were either not certified for occupancy and thus un-rentable due to multiple severe violations of municipal occupancy and code violations that were known and hidden from Haynes, or requiring significant repairs at a substantial expense to Haynes.

122.     The Defendants racketeering activities further caused the Haynes' substantial damages due to the fact that numerous tenants in the Properties were not paying rent and eviction proceedings were necessary.

123.    These injuries were a foreseeable consequence of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), and their conspiracy in furtherance of those racketeering violations, in violation of 18 U.S.C. § 1962(d).

**WHEREFORE**, Plaintiff Gregory Haynes respectfully requests the Court to enter judgment in his favor and against each of the CitiPoint Enterprise Defendants and their conspirators and order the following relief:

(a)  All damages proven pursuant to RICO, trebled as permitted by law;

(b)  Punitive damages, attorney fees, and costs as permitted by law; and

(c)  Such other and further relief as the Court may deem just and appropriate.

## COUNT II: COMMON LAW FRAUD

124.    Plaintiffs restate Paragraphs 1 through 123 as if fully set forth herein.

125.    Defendant Mikosz, Chojnacki's statements set forth above concerning the Properties, its condition, and its leased status were false statements of material fact.

126.    Defendants Mikosz and Chojnacki made the statements with knowledge that they were false.

127.    Defendants Mikosz and Chojnacki made the false statements with the intention to induce Haynes to purchase the Property under falsified premises.

128.    Haynes reasonably and justifiably relied on the said Defendants' false statements.

129.    Haynes suffered damages due to reliance on the false statements.

130.    Accordingly, the Defendants' statements, Plaintiff's reliance thereon, and resulting damages constitute common law fraud.

WHEREFORE, Plaintiff, Gregory Haynes, prays that this Honorable Court enter judgment in his favor and against Defendants in an amount in excess of the jurisdictional limit of

Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

### COUNT III: VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (ILLINOIS CONSUMER FRAUD ACT)

131.    Plaintiffs re-state Paragraphs 1 through 130 above as if fully set forth herein.

132.    Defendants Mikosz and Chojnacki's statements, including but not limited to their statements set forth above concerning 12430 Fairview and 12442 Fairview Properties, its condition, and its leased status were false statements of material fact and constituted a deceptive act or practice by the said Defendants.

133.    Defendants Mikosz, Chojnacki, Long and Irwin intended that Haynes rely on the deception.

134.    The occurrence of the deception was in the course of conduct involving trade and commerce.

135.    The deceptions were originated by residents of Illinois, concern Illinois real estate, and have resulted in violations of Illinois municipal laws.  Accordingly, the conduct alleged herein directly and indirectly affect the State of Illinois.

136.    The deception was the proximate cause of actual damage to Haynes.

137.    Accordingly, the conduct of deception perpetrated by Defendants Mikosz Chojnacki, Long and Irwin constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

WHEREFORE, Plaintiff Gregory Haynes prays that this Honorable Court enter judgment in his favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

22

### COUNT IV: VIOLATION OF THE ILLINOIS REAL ESTATE LICENSE ACT

138.   Plaintiffs re-state Paragraphs 1 through 137 above as if fully set forth herein.

139.   Defendants Mikosz and Chojnacki provided real estate services in this transaction as agents of Chase Real Estate LLC.

140.   Defendants Mikosz, Chojnacki and Chase Real Estate LLC were "Licensees" under the Real Estate License Act, 225 ILCS 454/1-1 *et seq.*

141.   Section 15-25 of the Real Estate License Act mandates that:

> Licensees shall treat all customers honestly and shall not negligently or knowingly give them false information.

142.   Section 15-5 of the Real Estate License Act specifies that:

> This Article 15 may serve as a basis for private rights of action and defenses by sellers, buyers, landlords, tenants, real estate brokers, and real estate salespersons.

143.   Defendants Mikosz, Chojnacki and Chase Real Estate LLC breached the requirements of the Real Estate License Act by committing the following actions:

a)   fraudulently misrepresenting that they represented the Plaintiffs as buyer when in actuality they represented, were affiliates of and/or were direct agents of the seller;

b)   fraudulently misstating the condition of the Property;

c)   fraudulently misstating the tenancy of the Property;

d)   fraudulent falsification of the purported rent roll;

e)   fraudulently misrepresenting to the Plaintiffs that the seller in the transaction was a directly sourced, off-market seller when in truth the Seller was comprised of, directly affiliated with or controlled by the Defendants themselves or were agents thereof;

144.   Plaintiffs relied on Defendants Mikosz, Chojnacki and Chase Real Estate LLC's statements and suffered damages therefrom.

WHEREFORE, Plaintiff Gregory Haynes prays that this Honorable Court enter judgment in his favor and against Defendants in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

### COUNT V:  NEGLIGENT MISREPRESENTATION

145.    Plaintiffs re-state Paragraphs 1 through 144 above as if fully set forth herein.

146.    Defendants Mikosz, Chojnacki, Long and Irwin's statements, including but not limited to their statements set forth above concerning the Properties, their condition, and their leased status were false statements of material fact.

147.    Defendants Mikosz, Long, Irwin, and Chojnacki's made the false statements through carelessness or negligence in ascertaining the truth of the statement by the party making it.

148.    Defendants Mikosz, Long, Irwin, and Chojnacki's false statements were made with intention to induce Haynes to act.

149.    Haynes' actions in consummating the transaction were in reliance on the false statements.

150.    Haynes' reliance was the proximate cause of damage to Haynes.

151.    Defendants Mikosz, Long, Irwin, and Chojnacki's statements therefore constitute Negligent Representation.

WHEREFORE, Plaintiff Gregory Haynes prays that this Honorable Court enter judgment in his favor and against DEFENDANTS in an amount in excess of the jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), plus their costs of suit, attorneys' fees, and such other relief as this Court deems just and equitable.

## COUNT VI
## UNJUST ENRICHMENT

152.     The Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1-151 of this Complaint, as if fully set forth herein.

153.     Defendants did conspire and collude in the undertaking to mislead Haynes into believing he would be acquiring investment property directly from a long-time seller.

154.     Haynes believed and relied on Defendants' scheme of misleading statements and conduct when he agreed to buy the Properties from Defendants, who had secretly already purchased the Properties directly from the long-time seller for $300,000 less than the amount that they fraudulently induced Haynes to pay.

155.     The direct and proximate cause of the Defendants was to deprive the Plaintiff of the fair bargain they had promised him.

156.     As a consequence of receiving and retaining the $300,000, the Defendants have unjustly retained a benefit to the Plaintiff's detriment, and Defendants' retention of the benefit violates the fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in his favor and against each of Defendants and order the following relief:

a)   Payment to the Plaintiff of the benefit that they received as a consequence of their fraudulent misrepresentations being the difference between the purchase price of the Property paid by Plaintiff and that paid by themselves or such other amount to be proven at trial;

b)   Punitive damages, attorney fees, and costs as permitted by law; and

c)   Such other and further relief as the Court may deem just and appropriate.

Respectfully Submitted,

/s/Carmen Gaspero

_____

/s/Lisa Gaspero

_____


Gregory Haynes
By: His Counsel


Gaspero & Gaspero
Attorneys at Law, P.C.
Carmen A. Gaspero
Lisa M. Gaspero
2001 Butterfield Rd., Suite 1022
Downers Grove, Illinois 60515
630-687-9700