IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY HAYNES, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 23 C 1596 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| FAIRVIEW AVENUE PROPERTIES LLC, et al., | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gregory Haynes claims Defendants Laurena "Lori" Mikosz and Marcin Chojnacki tricked him into buying two run-down apartment buildings. While holding themselves out as Haynes's real-estate brokers, Mikosz and Chojnacki allegedly fed him false assurances about the buildings' condition and profitability. Behind the scenes, Mikosz's and Chojnacki's associates, the remaining Defendants, through "puppet entities," bought the buildings and resold them to Haynes at a significant markup. Haynes sued, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), (d), and various state-law claims. (Dkt. 27). Defendants now move to dismiss. (Dkt. 51). For the reasons below, the motion [51] is denied.

## BACKGROUND

In October 2021, Plaintiff Gregory Haynes, a retiree in California, saw an advertisement on Instagram for CitiPoint Properties ("CitiPoint"). (Dkt. 27 ¶¶ 17, 20).[1] According to the advertisement, CitiPoint helped real-estate investors find undervalued and underperforming properties—so-called "directly sourced" properties. (*Id.* at ¶ 20). The advertisement promised

---

[1] At the time, CitiPoint was an "unincorporated enterprise," organized by Defendant Marcin Chojnacki, that appeared to be a real-estate investment firm. (*Id.* at ¶ 15). Later, on December 28, 2022, CitiPoint reorganized as Citypoint Illinois, LLC, which is owned and controlled by non-party Citypoint Group, Inc. (*Id.* at ¶¶ 14–15).

1

"rapidly increasing equity and high cash flow." (*Id.*) Responding to the advertisement, Haynes sent a query to CitiPoint. (*Id.* at ¶ 21). Defendant Lori Mikosz, who was in Illinois, replied, explaining that her company introduces "mom and pop" apartment building owners to investors. (*Id.* at ¶¶ 4, 22–23). Mikosz also told Haynes that she was affiliated with Defendant Mainstreet Property Management LLC ("Mainstreet"), a property-management company. (*Id.* at ¶ 24). Mikosz explained that Haynes could invest in a building that was underperforming due to its ownership and self-management by a local, unprofessional landlord. (*Id.* at ¶¶ 25–26). By purchasing property at a bargain and using Mainstreet's property-management service, Mikosz proposed, Haynes could expect "substantial cash flow." (*Id.* at ¶ 26).

Mikosz then set up a conference call during which she and Defendant Chojnacki "welcome[d] Haynes to the CitiPoint family." (*Id.* at ¶ 27). Mikosz introduced Chojnacki as Mainstreet's principal and her managing broker at Defendant Chase Real Estate, LLC ("Chase RE"). (*Id.* at ¶ 27). During the welcome call, Mikosz and Chojnacki told Haynes that their team—"including lenders, building managers, maintenance, insurance, and lawyers"—could help him become a "successful real estate investor." (*Id.* at ¶ 28). Mikosz and Chojnacki led Haynes to believe that they would represent him as agents of Chase RE, a CitiPoint affiliate, and "the transactions would be safely negotiated and consummated under the auspices of Chase Real Estate." (*Id.* at ¶¶ 29, 32). Both Chojnacki and Mikosz emailed Haynes from email addresses at the domain, "@mychaseagent.com." (*Id.* at ¶ 30). At the time, the CitiPoint website was "a virtual reflection" of Chase RE's website. (*Id.* at ¶ 31; *see* Dkts. 27-1, 27-2).

Mikosz sent Haynes a weblink with information about three residential properties, including two that he later purchased: 12430 Fairview Ave. and 12442 Fairview Ave. ("the Properties") in Blue Island, Illinois. (Dkt. 27 ¶¶ 33–34). Mikosz said that the "old couple" who

2

owned the Properties had "limited property management skills." (*Id.* at ¶ 35). She also told Haynes that the Properties were in good condition, and all the tenants were current on their rent. (*Id.* at ¶ 36). Only one unit was vacant, Mikosz explained, and it needed about $3,000 worth of work to become rentable—work which her affiliated team of contractors could complete "very quickly." (*Id.* at ¶¶ 36–37). Mikosz gave Haynes and his lender a cash-flow analysis showing that Haynes could turn a profit if he bought both Properties for $900,000. (*Id.* at ¶ 36). Mikosz and Chojnacki repeated these assurances throughout their dealings with Haynes. (*Id.* at ¶¶ 76–77). Before closing, Defendants gave Haynes a rent roll indicating that the Properties were fully leased except for one unit and that all tenants were current on their rent. (*Id.* at ¶ 85; Dkt. 27-4).

Mikosz assured Haynes that, as his broker, she could act on his behalf to purchase the Properties from the "mom and pop" seller. (Dkt. 27 ¶ 43). Haynes believed that Mikosz and Chojnacki were acting as his agents, and he agreed to submit an offer. (*Id.* at ¶¶ 44–45). On October 16, 2021, Haynes entered an agreement to purchase the Properties. (*Id.* at ¶ 46; Dkt. 27-3). Although Mikosz and Chojnacki had repeatedly told Haynes that the counterparties to the sale were the "long-standing owners of the Properties," the agreement named Defendant TCF National Holdings, Inc. ("TCF National") as the seller. (Dkt. 27 ¶¶ 46–47). TCF National's owner and manager is Defendant Kathleen Long, who is also Chojnacki's roommate and "paramour." (*Id.* at ¶ 6). Haynes never learned about TCF National or Long during negotiations. (*Id.* at ¶¶ 78–79).

In November 2021, Haynes traveled to Illinois to see the Properties and attend building inspections—after Mikosz tried to dissuade him from doing so. (*Id.* at ¶¶ 49–53). When Haynes arrived, Mikosz told him that, due to a "mix-up," the tenants had not been "properly notified" of the inspections. (*Id.* at ¶ 55). Nevertheless, Mikosz assured Haynes that she had seen inside the properties and there were "no significant issues." (*Id.* at ¶¶ 56, 62). Since properties like these "sell

fast," Mikosz advised Haynes that he "should not wait" to see inside the units. (*Id.* at ¶ 57). Haynes walked around the buildings with Mikosz's inspector. (*Id.* at ¶¶ 58–59). Because "the roof, boiler, water heater, exterior bricks, and electrical all looked good," the inspector said, there was no need to worry about the inside of the units. (*Id.* at ¶ 59).

After the tour, Haynes followed Mikosz to her office and met Chojnacki. (*Id.* at ¶¶ 60–61). Haynes said that he would be in Chicago for four days; he reiterated his desire to have a "full inspection" and see inside the units of the Properties during his visit. (*Id.* at ¶ 62). But four days was not enough time to give the tenants notice, Mikosz explained. (*Id.*) She reassured Haynes that she had seen the units herself, making further inspection unnecessary. (*Id.*) Again, Mikosz and Chojnacki warned Haynes that the Properties would "sell fast." (*Id.* at ¶ 63).

Unbeknownst to Haynes, at the time of the inspection in November 2021, Defendants were in the process of buying the Properties for $600,000. (*Id.* at ¶¶ 66, 70). On December 21, 2021, Long and Defendant Anand Sheth purchased the Properties through their LLCs, Mon Ami TCF LC ("Mon Ami") and Fairview Avenue LLC ("Fairview Avenue"). (*Id.* at ¶¶ 8–9, 68, 81). In February 2022, Haynes acquired title to the Properties for $900,000. (*Id.* at ¶ 80). Although the purchase agreement had named TCF National as the seller, the grantor on the deed was Fairview Avenue, which is owned by Mon Ami. (*Id.* at ¶¶ 9, 80). Fairview Avenue gave Chase RE a commission from the sale. (*Id.* at ¶ 115).

Defendant Rebecca Irwin, an Illinois attorney, signed the deed as the "seller." (*Id.* at ¶¶ 5, 87–88). Throughout the dealings with Haynes, Irwin acted on behalf of Fairview Avenue and Defendant Midwest Title and Closing Services LLC ("Midwest Title"). (*Id.* at ¶¶ 87). Irwin provided "registered agent services to the various puppet entities"; she housed "various legal operations" relating to the entities and deals; and she charged Haynes a fee for "closing

coordination." (*Id.* at ¶ 88). Midwest Title—owned by Irwin, Chojnacki, and nonparty XYZABC, Inc., of which Irwin is the president—shares office space with Irwin, Chojnacki, Mikosz, Mainstreet, and Defendant EJ Investment Group Inc. ("EJ Investment"), which owns and controls Mainstreet. (*Id.* at ¶¶ 11, 13, 16, 89).

After taking ownership, Haynes learned that the Properties had no "mom and pop" seller. (*Id.* at ¶¶ 64, 83). Nor was the $900,000 purchase price a "bargain," considering Long—Chojnacki's paramour—bought the Properties for $600,000 during the negotiations with Haynes. (*Id.* at ¶ 84). Many of the Properties' units were vacant or uninhabitable. (*Id.* at ¶¶ 69, 92). Contrary to the rent roll Haynes had received, some tenants were not current on rent. (*Id.* at ¶ 86). To boot, Defendants did not follow Blue Island inspection and real-estate-transfer requirements, and the Properties were not up to building code. (*Id.* at ¶ 93). As a result, Haynes received fines and citations. (*Id.* at ¶ 94). Despite these issues, Defendants, through Mainstreet, have charged Haynes for unexplained costs and withheld any funds that tenants have paid. (*Id.* at ¶ 96). Defendants have also tried to "repeat the scam" by offering Haynes additional properties. (*Id.* at ¶ 97). Haynes is not alone: Defendants have allegedly scammed at least four other investors with similar schemes. (*Id.* at ¶¶ 98–99).

Haynes filed this suit on March 14, 2023, (Dkt. 1), and amended his complaint on May 16, 2023, (Dkt. 27).[2] In Count I of the Amended Complaint, Haynes alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c), (d). (*Id.* at ¶¶ 100–20).

---

[2] This is one of eleven related actions proceeding before this Court. *See* Amended Complaint, *Malik v. Prairie Raynor LLC*, No. 23-cv-01182 (N.D. Ill. Mar. 2, 2023); Complaint, *Shankar v. Fairview Ave. Props. LLC*, No. 23-cv-01469 (N.D. Ill. Mar. 9, 2023); Complaint, *Abbas v. Mikosz*, No. 23-cv-01691 (N.D. Ill. Mar. 17, 2023); Complaint, *Sor v. TCF Nat'l Holdings, Inc.*, No. 23-cv-02401 (N.D. Ill. Apr. 18, 2023); Complaint, *Chen v. Chojnacki*, No. 23-cv-02520 (N.D. Ill. Apr. 21, 2023); Complaint, *Michel v. Chojnacki*, No. 23-cv-02546 (N.D. Ill. Apr. 24, 2023); Complaint, *Said v. Chojnacki*, No. 23-cv-02858 (N.D. Ill. May 5, 2023); Complaint, *Stafford v. Chojnacki*, No. 23-cv-03173 (N.D. Ill. May 19, 2023); Complaint, *Hui v. Chojnacki*, No. 23-cv-03430 (N.D. Ill. May 31, 2023); Complaint, *Fernandez v. Chojnacki*, No. 23-cv-04406 (N.D. Ill. July 7, 2023).

Count II is a common-law fraud claim against Mikosz and Chojnacki. (*Id.* at ¶¶ 121–27). Count III alleges Mikosz, Chojnacki, Long, and Irwin violated the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1 *et seq.* (*Id.* at ¶¶ 128–34). And Count IV alleges Mikosz, Chojnacki, and Chase RE violated the Illinois Real Estate License Act (IRELA), 225 ILCS 454/1 *et seq.* (*Id.* at ¶¶ 135–41). In Count V, Haynes brings a negligent-misrepresentation claim against Mikosz, Chojnacki, Long, and Irwin. (*Id.* at ¶¶ 142–48). Finally, Count VI is an unjust-enrichment claim against all Defendants. (*Id.* at ¶¶ 149–53). Chase RE, joined by the remaining Defendants, moves to dismiss the Amended Complaint for failure to state a claim. (Dkt. 51; *see also* Dkts. 53–56, 58).

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570 (7th Cir. 2023) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)).

For claims sounding in fraud, Federal Rule of Civil Procedure 9(b) requires plaintiffs to "state with particularly the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, a plaintiff must "describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any

6

newspaper story.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)).

## DISCUSSION

### I. Racketeer Influenced and Corrupt Organizations Act (RICO) (Count I)

In Count I, Haynes alleges that Chojnacki, Mikosz, Long, Citypoint Illinois, Fairview Avenue, and TCF National (collectively, "the § 1962(c) Defendants") violated § 1962(c), (Dkt. 27 ¶¶ 100–10), while the remaining Defendants Sheth, Irwin, Midwest Title, Mon Ami, EJ Investment, Mainstreet, and Chase RE (collectively, "the § 1962(d) Defendants") violated § 1962(d), (*id.* at ¶¶ 111–16). Defendants challenge Haynes's claims under both subsections. Before diving into the RICO allegations, it is worth noting that the complaints in the ten related cases pending before this Court—all describing similar schemes to defraud other plaintiffs by the same or similar defendants[3]—give Haynes's claims a plausibility boost. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) ("It is appropriate to accord limited corroborative weight to allegations in another's lawsuit.").

#### A. Section 1962(c)

Under § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1964(c) "empowers private parties to bring lawsuits against those engaged in racketeering activity when that activity has caused them harm."

---

[3] *See* Amended Complaint, *Malik*, No. 23-cv-01182; Complaint, *Shankar*, No. 23-cv-01469; Complaint, *Sor*, No. 23-cv-02401; Complaint, *Chen*, No. 23-cv-02520; Complaint, *Michel*, No. 23-cv-02546; Complaint, *Said*, No. 23-cv-02858; Complaint, *Abbas*, No. 23-cv-01691; Complaint, *Stafford*, No. 23-cv-03173; Complaint, *Hui*, No. 23-cv-03430; Complaint, *Fernandez*, No. 23-cv-04406.

*Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1093 (7th Cir. 2018) (citing *Rotella v. Wood*, 528 U.S. 549, 557 (2000)). To state a claim under § 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *accord Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 587–88 (7th Cir. 2017).

### 1. Conduct of an Enterprise

A plaintiff's first step under § 1962(c) is to identify an "enterprise." *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013) (citation omitted). An "enterprise" means "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *see also Walgreen*, 719 F.3d at 853 (observing that the statutory definition of "enterprise" is construed broadly). An "association-in-fact" enterprise has "three structural features: [1] a purpose, [2] relationships among those associated with the enterprise; and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009); *Sabrina*, 869 F.3d at 588. Put simply, this type of enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle*, 556 U.S. at 946 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

Separate from the RICO enterprise, the plaintiff must point to a "person"—that is, the defendant. *Walgreen*, 719 F.3d at 853 (citing *Cedric Kushner*, 533 U.S. at 161); *see also Baker v. IBP, Inc.*, 357 F.3d 685, 692 (7th Cir. 2004) ("Without a difference between the defendant and the 'enterprise' there can be no violation of RICO."). "[T]hat 'person' must have conducted or participated in the conduct of the *enterprise's* affairs, not just its own affairs." *Walgreen*, 719 F.3d

at 854 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)) (cleaned up). In this context, conduct refers to a defendant's operation or management of the enterprise. *See Sabrina*, 869 F.3d at 589 (citing *Reves*, 507 U.S. at 179).

Here, Haynes has sufficiently pleaded an association-in-fact enterprise with purpose, relationships, and longevity. He alleges that the § 1962(c) Defendants—which no one disputes are RICO "persons"—"were associated in fact" as the "CitiPoint Enterprise." (Dkt. 27 ¶¶ 100–01). That enterprise's "primary purpose . . . was to lure and then fleece unsuspecting real estate investors" for financial gain. (*Id.* at ¶ 103). To ensure the CitiPoint Enterprise's profit at the expense of investors like Haynes, its members allegedly worked on both sides of real-estate transactions. Mikosz and Chojnacki worked together from their shared office, doing business as CitiPoint (later, as Citypoint Illinois). After drawing Haynes in with promises of too-good-to-be-true investment opportunities, Mikosz and Chojnacki purported to represent Haynes as real-estate brokers in his purchase of the Properties. Mikosz and Chojnacki offered Haynes access to their comprehensive team of real-estate professionals, and they encouraged Haynes to trust their numerous and repeated misstatements about the Properties' condition and profitability. After Haynes agreed to buy the Properties for $900,000, Long (Chojnacki's paramour and roommate), through TCF National, Mon Ami, and Fairview Avenue, bought the Properties for $600,000 and resold them to Haynes at a $300,000 profit. Behind the scenes, Irwin helped pulled the strings on the complex web of "puppet entities" that helped shield the conflicts of interest from view.

The sophisticated coordination and relationships among Defendants on both sides of Haynes's purchase reflect "an unusual degree of economic interdependence" that helps nudge the existence of the CitiPoint Enterprise across the plausibility threshold. *See Bible v. U.S. Aid Funds, Inc.*, 799 F.3d 633, 656 (7th Cir. 2015); *see also, e.g., Jay E. Hayden Found. v. First Neighbor*

9

*Bank, N.A.*, 610 F.3d 382, 384, 388–89 (7th Cir. 2010) (holding that the plaintiff adequately alleged an enterprise by pointing to a coordinated fraudulent scheme); *cf. Walgreen*, 719 F.3d at 855 ("RICO does not penalize parallel, uncoordinated fraud." (citing *Boyle*, 556 U.S. at 947 n.4)). Indeed, that coordination appears essential to the success of the alleged scheme. Rather than "a run-of-the-mill commercial relationship where each entity acts in its individual capacity to pursue its individual self-interest," therefore, the CitiPoint Enterprise looks more like a "truly joint enterprise where each individual entity acts in concert with the others to pursue a common interest." *See Bible*, 799 F.3d at 655–56. Moreover, the alleged CitiPoint Enterprise lasted long enough for its members to pursue the enterprise's purpose of attracting investors and profiting from their purchases. *See Walgreen*, 719 F.3d at 853 (citing *Boyle*, 556 U.S. at 946). After Haynes closed on the Properties, Defendants continued to offer him additional properties and, through Mainstreet, charged him for unexplained costs and withheld tenant funds. Defendants have allegedly scammed at least four other investors like Haynes.

Defendants contend that Haynes has failed to plead a distinct enterprise because there is "complete identity between the alleged 'persons' and the alleged members of the 'enterprise.'" (Dkt. 52 at 6–7); *see Baker*, 357 F.3d at 692. This argument rests on the mistaken view that an enterprise's members cannot be named as defendants. Of course, an entity cannot be liable under RICO for "operat[ing] *itself* unlawfully." *See Baker*, 357 F.3d at 691–92; *Walgreen*, 719 F.3d at 854; *see also Haroco, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 747 F.2d 384, 402 (7th Cir. 1984), *aff'd on other grounds*, 473 U.S. 606 (1985). Yet, a plaintiff may state a RICO claim against each member of an association-in-fact enterprise. *See Haroco*, 747 F.2d at 401 ("Where persons associate 'in fact' for criminal purposes . . . each person may be held liable under RICO for his,

10

her, or its participation in conducting the affairs of the association in fact through a pattern of racketeering activity.").

To satisfy RICO's distinctness requirement, the enterprise can "be either formally (as when there is incorporation) or practically (as when there are other people besides the proprietor working in the organization)" separate from the "person." *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985); *see also Cedric Kushner*, 533 U.S. at 162–63 ("The corporate owner/employee, a natural person is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more 'separateness' than that." (citing *McCullough*, 757 F.2d at 144)). Haynes's allegations suggest that the CitiPoint Enterprise is distinct from each of the § 1962(c) Defendants who served as members. Unlike the enterprise's members—who are "persons," capable of holding property— the CitiPoint Enterprise is a network of individuals and entities, associated in fact, and thus unable to "hold any interest in property or even be brought into court." *See Haroco*, 747 F.2d at 401. Accordingly, Haynes has alleged the existence of a distinct enterprise.

Haynes has also plausibly alleged that the § 1962(c) Defendants participated in operating or managing the CitiPoint Enterprise's affairs. *See Sabrina*, 869 F.3d at 589 ("[T]o satisfy the 'conduct' element, a plaintiff must allege that the defendant participated in the operation or management of the enterprise itself, and that the defendant played some part in directing the enterprise's affairs." (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727–28 (7th Cir. 1998))) (cleaned up); *Reves*, 507 U.S. at 179; *see also Bible*, 799 F.3d at 657. The precise hierarchy of the CitiPoint Enterprise may be unclear. Yet, Haynes has alleged that Chojnacki and Mikosz, through Citypoint Illinois, attracted and purported to represent unwitting investors while Long, through Mon Ami, TCF National, and Fairview Avenue, purchased and resold properties to those

11

investors. These allegations permit a reasonable inference that the § 1962(c) Defendants held leadership roles and took part in directing the enterprise.

### 2. Pattern of Racketeering Activity

A pattern of racketeering activity requires the completion of at least two predicate acts within ten years. *Bible*, 799 F.3d at 659; 18 U.S.C. § 1961(5). The two violations "must exhibit continuity plus relationship. Related predicate acts have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Sabrina*, 869 F.3d at 589 (quoting *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 828 (7th Cir. 2016)) (cleaned up); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "Continuity is 'centrally a temporal concept.'" *Empress*, 831 F.3d at 828 (quoting *H.J.*, 492 U.S. at 242). Analytically, "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* (quoting *H.J.*, 492 U.S. at 241).

While Defendants do not challenge Haynes's satisfaction of the relationship-plus-continuity test, they argue that Haynes has failed to adequately plead predicate acts. (Dkt. 52 at 7–10). As predicate acts, Haynes alleges mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. (Dkt. 27 ¶¶ 106–07). "The elements of mail fraud are: (1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme." *Bible*, 799 F.3d at 657 (quoting *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 298–99 (7th Cir. 2003)) (cleaned up); 18 U.S.C. § 1341. Wire fraud has the same elements, except that the defendant must use interstate wires instead of mail to

further the scheme. *Bible*, 799 F.3d at 657 (citing *United States v. Green*, 648 F.3d 569, 577–78 (7th Cir. 2011)); 18 U.S.C. § 1343.

Haynes's allegations of mail and wire fraud are subject to Rule 9(b)'s particularity requirement. *See Bible*, 799 F.3d at 658; Fed. R. Civ. P. 9(b). At a minimum, therefore, Haynes must "describe the two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Bible*, 799 F.3d at 658 (quoting *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001)). Yet, Rule 9(b) does not demand "form for form's sake": "although 'plaintiffs are not absolutely required to plead the specific date, place, or time of the fraudulent acts,' they still must 'use some alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Pirelli*, 631 F.3d at 442 (internal quotation omitted). The requisite level of detail may vary from case to case. *Id.* (citing *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1324 (7th Cir. 1998)). Since "fair notice is the 'most basic consideration underlying Rule 9(b),' in a case involving multiple defendants, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (quoting *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777–78 (7th Cir. 1994)).

Haynes alleges that "Defendants placed ads on the Internet and on social media with the intent to induce investors to participate in 'directly sourced' real estate opportunities." (*Id.* at ¶ 107(a)). Yet, Defendants "actually intended to sell the duped investor their own significantly marked-up property." (*Id.*) Haynes alleges further that Defendants engaged in a "sustained fiction," "replete with misrepresentations and calculated omissions" to mislead Haynes into believing that he was buying property from an "old retiring couple" at a bargain. (*Id.* at ¶ 107(b)). Haynes's

13

RICO Count incorporates his previous, more detailed allegations. (*See id.* at 16). While some of these allegations lump Defendants together, others describe the "who, what, when, where, and how" of the fraud.

For example, in October 2021, using wired communication, Mikosz sent Haynes a response to an Instagram advertisement for CitiPoint (now Citypoint Illinois). (*Id.* ¶¶ 20–22). From Illinois, Mikosz told Haynes, in California, that CitiPoint could help him buy underperforming real estate from "mom and pop" apartment building owners and make "substantial cash flow" with proper management. (*Id.* at ¶¶ 22–26). Later that month, Mikosz and Chojnacki scheduled a "welcome" conference call with Haynes and told him that he could become a "successful real estate investor" with their help as real-estate agents and with access to their team of professionals. (*Id.* at ¶¶ 27–29). Mikosz and Chojnacki then sent Haynes email correspondence at the domain, "@mychaseagent.com" throughout the relevant time period, including sending Haynes a link to three properties that she stated were owned by an "old couple." (*Id.* at ¶¶ 30–35). In November 2021, Haynes travelled from California to Illinois to visit the Fairview Properties. (*Id.* at ¶ 53). While at Mikosz's office, she explained there was "mix-up" and Haynes could not tour the inside of the Properties' units, but Mikosz and Chojnacki repeatedly assured Haynes that the units were in good condition. (*Id.* at ¶¶ 56, 62–63). Haynes alleges Mikosz made these false statements with intent to defraud him. (*Id.* at ¶¶ 64, 83, 107); *see Bible*, 799 F.3d at 658 (observing that fraudulent intent "may be alleged generally" (citing Fed. R. Civ. P. 9(b))). Believing the seller was a "mom and pop" landlord," Haynes agreed to purchase the Properties on October 17, 2021. (*Id.* at ¶¶ 43, 46). But in truth, the seller was TCF National, owned and controlled by Long (*Id.* at ¶ 80). The price was not a "bargain" because Long and Sheth purchased the property for $600,000 and sold

14

it to Haynes for $900,000. (*Id.* at ¶ 84). And the Properties were poorly maintained and subjected to various building code violations. (*Id.* at ¶ 93).

Long and Sheth, using TCF National, Fairview Avenue, and Mon Ami, participated in the alleged fraud by purchasing the Properties in December 2021, and selling them to Haynes in February 2022. (*Id.* at ¶¶ 8, 46–47, 68, 78–81, 84). Considering the relationship among Long, Sheth, and Chojnacki, it is plausible to infer that they—and by extension, their LLCs—contributed to the scheme with fraudulent intent. Haynes's well-pleaded allegations add up to at least two plausible instances of wire fraud—a sufficient pattern of racketeering activity. *See Empress*, 831 F.3d at 827 ("Each use of the wires can be an individual count of wire fraud and an individual RICO predicate for the purpose of establishing two predicate acts.").[4] Accordingly, Plaintiff's § 1962(c) claim survives.

B.  **Section 1962(d)**

Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). To state a claim under § 1962(d), a plaintiff "must allege that the defendant (1) agreed to maintain an interest in or control of an enterprise, or to participate in an enterprise's affairs, (2) through a pattern of racketeering activity, and (3) that the defendant agreed that some member of the conspiracy (not necessarily the defendant herself) would commit at least two predicate acts in furtherance of those goals." *Domanus v. Locke Lord LLP*, 847 F.3d 469, 479 (7th Cir. 2017) (citing *DeGuelle v. Camilli*, 664 F.3d 192, 204 (7th Cir. 2011)). Subsection (d)'s concern is "the agreement to participate in an endeavor, which if completed would violate a substantive provision of the Act." *Id.* (citing *Goren*, 847 F.3d at 731–32); *see also Empress*, 831 F.3d at 822–23 ("As with any conspiracy, a RICO

---

[4] Haynes alleges that "[t]he CitiPoint Enterprise conducted its racketeering activity, in part, . . . through the mailing of checks" (*Id.* at ¶ 105).

conspirator 'must intend to further an endeavor which, if completed, would satisfy all elements of a substantive criminal offense, but it suffices that he would adopt the goal of furthering or facilitating the criminal endeavor.'" (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997))); *Domanus*, 847 F.3d at 479. Here, that substantive provision is subsection (c).

Defendants argue that Haynes's § 1962(d) claim fails because his § 1962(c) claim is deficient. (Dkt. 52 at 5–6); *see, e.g.*, *Patel v. Mahajan*, 2012 WL 3234397, at *5 (N.D. Ill. Aug. 6, 2012) ("When a § 1962(c) claim fails, a § 1962(d) claim premised on the same facts fails as well." (collecting cases)). Yet, Haynes has stated a claim under § 1962(c). Defendants raise no other arguments against Haynes's § 1962(d) claim, and the Court declines to invent arguments on their behalf. *See Hicks v. Hepp*, 871 F.3d 513, 531 (7th Cir. 2017) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel." (quoting *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011))). Thus, Count I may proceed in its entirety.

## II. State-Law Claims (Counts II–VI)

In Haynes's remaining claims under state law, he alleges common-law fraud (Count II); violation of the ICFA (Count III); violation of the IRELA (Count IV); negligent misrepresentation (Count V); and unjust enrichment (Count VI). (Dkt. 27 ¶¶ 121–53). With scant citations to caselaw, Defendants contend that Counts II through V sound in fraud, and these claims fail to meet Rule 9(b)'s heightened pleading requirement "for the same reasons" as Haynes's RICO claim. (Dkt. 52 at 10–13). In the same vein, Defendants point out that Haynes's unjust-enrichment claim is "tied to the fate" of his other claims. (*Id.* at 12–13 (quoting *Vanzant v. Hill's Pet Nutrition*, 934 F.3d 730, 740 (7th Cir. 2019))); *see Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) ("Under Illinois law, there is no stand-alone claim for unjust enrichment."). Again,

Haynes has stated a RICO claim, and the Court need not invent arguments for Defendants. *See Hicks*, 871 F.3d at 531. By failing to develop further arguments on the sufficiency of Haynes's state-law claims, Defendants have waived any arguments they might have made. *See Wernstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005); *Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023).

## CONCLUSION

For the reasons above, Defendants' Motion to Dismiss [51] is denied in its entirety. Haynes's claims in Counts I–VI may move forward consistent with this Opinion.

_____
Virginia M. Kendall
United States District Judge

Date: December 6, 2023

17