IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **GREGORY HAYNES,** *Plaintiff,* v. **FAIRVIEW AVENUE PROPERTIES LLC,** *et al.*, *Defendants.* | Case No. 1: 23-cv-01596 Judge: Hon. Virginia M. Kendall Magistrate: Hon. Jeffrey T. Gilbert |

### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Now Comes the Plaintiff, by his attorneys, Gaspero & Gaspero, Attorneys at Law, P.C. and brings his Motion for Preliminary Injunction. In support, Plaintiff states:

**I.    INTRODUCTION**

18 U.S.C. § 1964(a) gives this Court inherent and statutory power to enjoin further violations of federal statutes. *Domanus v. Lewicki,* 2012 U.S. Dist. LEXIS 51941 1, 9 (N.D. Ill. 2012); *see also Jackson v. N'Genuity*, 2012 U.D. Dist. LEXIS 207065 1, 7 (N.D. Ill. 2012) ("courts who have ordered a restraint on assets pursuant to section 1964(a) have focused on the need to prevent future fraudulent transfers that would further the purpose of the defendants' RICO enterprise"); *see Motorola Credit Corp. v. Uzan,* 202 F. Supp. 2d 239 (S.D.N.Y. 2002); *Caterpillar Inc. v. Jerryco Footwear, Inc.,* 880 F. Supp. 578, (C.D. Ill. 1994) (finding that absent preliminary injunction, "the defendants would engage in further acts designed to defraud"); Plaintiffs bring their Motion for a Preliminary Injunction to prevent Defendants from doing this and to protect Plaintiffs from suffering irreparable, further harm.[1]

---

[1] Plaintiffs submit that they also likely have concurrent relief under F.R.C.P. 64, 740 ILCS 160/5(a).

## II. BACKGROUND FACTS

Plaintiffs have brought the present action, one of fifteen separate, related actions alleging against the various Defendants, *inter alia,* violations of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961, *et seq,* the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.,* and the Illinois Real Estate License Act, 225 ILCS 454/1-1, *et seq.*, along with common law fraud, breach of contract, negligent misrepresentation, and unjust enrichment. These cases have been consolidated for the purposes of discovery These matters have all arisen from a complex real estate scam where Defendants, acting together, over and over again, continuously lured and then tricked the various Plaintiffs into purchasing real estate and fed them false assurances about the properties' condition and profitability. Then, over and over again, behind the scenes, Defendants, through their puppet entities, secretly bought the properties themselves and resold them to Plaintiffs at a significant markup. Following this Court's rulings denying Defendants' Motions to Dismiss in ten of these proceedings, matters had been stayed pending mediation, which took place December 5, 2024. That mediation was unsuccessful.

Plaintiffs have become aware that during these proceedings, Defendants coordinated and cooperated to fraudulently convey, conceal, and/or otherwise convert, remove, encumber, and/or dissipate their assets. In fact, without notice to this Court, or to Plaintiffs, the Defendants have dissolved or terminated a majority of the Defendant party entities in these related cases, rendering them insolvent. Defendants did this despite the fact that prior to dissolution or termination, the party Defendants were solvent, with significant cash in the bank. Defendants dissolved or terminated the following party Defendants during these proceedings, all without notice to this Court or to Plaintiffs: Defendant First National Financial, Inc., Defendant Mainstreet Property

2

Management LLC, Defendant 1st Midwest Financial, Inc., Defendant TCF National Holdings, Inc., Defendant BMO Property Management, Inc., Defendant Fairview Avenue Properties LLC, Defendant Deodar, Evergreen, Butternut EC, LLC and Defendant FNBO Property Management LLC. (hereinafter "First National", "Mainstreet," "1st Midwest," "TCF", "BMO", "Fairview", "Deodar," "FNBO.").

As will be described more fully below, the Defendant entities were dissolved through the coordination and cooperation of individual Defendants Irwin, Mikosz, Rixer, Murphy, Brandonisio, Chojnacki, and Long. But Defendants did not stop at dissolving or terminating most of the Defendant party entities in these matters. Defendants also removed substantial cash from Defendant Midwest - an entity they chose not to dissolve.

While in this Court, and within this past year, Defendants Irwin, Rixer, Murphy, Chojnacki, and Long acted together in a complex and coordinated joint effort to 1) remove substantial cash from Defendant Midwest; and 2) use it to purchase real estate in the name of Defendant 1st Midwest. Then, these parties, in a further joint effort, 3) transferred, for zero consideration, title of that real estate from Defendant 1st Midwest to newly formed entities. Party Defendant Midwest therefore was depleted of that cash and the value of that cash was transferred by Defendants, through Defendant 1st Midwest, to the newly formed entities who are not parties to this action (but yet still directly controlled by party Defendants Irwin and Long).

Thus these newly formed entities, Asset Properties LLC, a Wyoming Limited Liability Company formed by Defendant Long on February 6, 2024, and Cunat Court LLC, an Illinois Limited Liability Company formed by Defendant Irwin on February 13, 2024 and controlled by Asset Properties LLC and Defendant Long, have the benefit of the cash value removed from party Defendant Midwest via the now dissolved Defendant 1st Midwest (Defendant Murphy). But the

3

Defendants did not stop there.

Defendants Chojnacki, Rixer, and EJ caused property owned by them to be sold, liquidating approximately $1,500,000 in assets owned and/or controlled by them. Defendants Long and TCF encumbered their property at 4721 Midlothian Turnpike, Crestwood by mortgaging it for cash and to remove any equity. Christian Chase, who is the sole owner of Chase Real Estate LLC ("Chase"), encumbered his primary residence with a mortgage in the amount of $430,000.00. Also, approximately two weeks before the first action was filed, Defendant Mikosz transferred ownership of her primary residence to her husband, for zero consideration, thereby removing her name from the title of her house.

The actions of Defendants Chojnacki, Rixer, EJ, Long, TCF, Mikosz, and Christian Chase (Chase) in conveying ownership of assets for zero consideration, or in substantially encumbering previously unencumbered real estate, are an effort to continue to perpetuate the fraud and will cause irreparable harm to Plaintiffs.

The actions of Defendants Irwin, Long, Murphy, and 1st Midwest, in removing substantial cash from Defendant Midwest and transferring it to entities who are not parties to this action (but controlled by Defendants Irwin and Long), is an effort to continue to perpetuate their fraud and will cause irreparable harm to Plaintiffs.

Further, dissolving or terminating Defendants First National, Mainstreet, 1st Midwest, TCF, BMO, Fairview, Deodar, and FNBO were effectuated in an effort to allow the Defendants, in coordination, to continue their fraudulent activities in violation of 18 U.S.C. § 1961 and 1964(a). Finally, while these matters have been pending, Defendants have continued to carry out their fraudulent activities in violation of 18 U.S.C. § 1961 and 1964(a) by using the Chase name and resources to solicit and entice to potential investors into their scheme. Defendant Chase has

4

allowed its name and resources to be used to carry out these fraudulent activities, much to the detriment of the public and the Plaintiffs.

Defendants acting in concert will continue to dissipate, conceal, and fraudulently convey their assets into the future. This Court can use its inherent and statutory power to enjoin further RICO violations and fraudulent conveyances. Plaintiffs bring their joint Motion for Preliminary Injunctions to prevent Defendants from doing this and to protect Plaintiffs – and the public as a whole - from suffering further, irreparable, harm.

### III. LEGAL STANDARD

In seeking a preliminary injunction, Plaintiffs must demonstrate (1) their cases have some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) they will suffer irreparable harm if the injunction is not granted. *Domanus v. Lewicki*, 2012 U.S. Dist. LEXIS 51941, 1, 8 (N.D. Ill. 2012). Once these requirements are met, the Court must then "consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Id.*

The Court "must also consider the public interest, if any, in granting or denying the motion, then weigh all of the factors together. " *Id.* The Seventh Circuit "has adopted a 'sliding scale approach,' which means that "the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Id.* This analysis is not mathematical, but rather subjective and intuitive. *Id.,* quoting *Long v. Board of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001) and *Ty, Inc. v. Jones Group, Inc.,* 2001 U.S. App. Lexis 843 (7th Cir. 2001).

### IV. PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS

As to the first element, Plaintiffs can show a likelihood of success on the merits by demonstrating a "better than negligible chance" of prevailing on at least one of their claims. *Domanus,* 2012 U.S. Dist. LEXIS 51941 at 11, *quoting Ty* at 897.

### A. The Facts in the Complaints State RICO Claims

When this Court denied Defendants' motions to dismiss under FRCP 12(b)(6), it found that Plaintiffs "sufficiently pleaded an association-in-fact enterprise with purpose relationships and longevity." *Malik v. Prairie Raynor LLC,* 2023 U.S. Dist. LEXIS 216953 1, 14 (N.D. Ill. 2023); *Haynes v. Fairview Ave. Props. LLC*, 2023 U.S. Dist. LEXIS 216945 1, 14 (N.D. Ill. 2023); *Shankar v. Fairview Ave. Props. LLC,* 2023 U.S. Dist. LEXIS 216956 1, 14 (N.D. Ill. 2023); *Chen v. Chojnacki,* 2023 U.S. Dist. LEXIS 216948 1, 12 (N.D. Ill. 2023); *Sor v. TCF Nat'l Holdings, Inc.*, 2023 U.S. Dist. LEXIS 216947 1, 11 (N.D. Ill. 2023); *Said v. Chojnacki,* 2023 U.S. Dist. LEXIS 216942 1, 12 (N.D. Ill. 2023); *Hui v. Chojnacki,* 2023 U.S. Dist. LEXIS 216950 1, 14 (N.D. Ill. 2023); *Stafford v. Chojnacki,* 2023 U.S. Dist. LEXIS 216949 1, 13 (N.D. Ill. 2023); *Michel v. Chojnacki,* 2023 U.S. Dist. 216954 1, 13 (N.D. Ill. 2023); *Abbas v. Page St. Props. LLC*, 2023 U.S. Dist. LEXIS 216943 1, 12 (N.D. Ill. 2023).

In its ruling, this Court concluded that "the sophisticated coordination and relationships among Defendants on both sides of [Plaintiffs' purchase] reflect 'an unusual degree of economic interdependence' that helps nudge the existence of the CitiPoint Enterprise across the plausibility threshold. " *citing Bible v. U.S. Aid Funds, Inc.,* 799 F.3d 633, 656 (7th Cir. 2015); *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384, 388-89 (7th Cir. 2010); *cf. Walgreen,* 719 F.3d at 855 ("RICO does not penalize parallel, uncoordinated fraud." (citing *Boyle,* 556 U.S. at 947 n.4)). *Malik v. Prairie Raynor LLC,* 2023 U.S. Dist. LEXIS 216953 at 15; *Haynes v. Fairview Ave. Props. LLC*, 2023 U.S. Dist. LEXIS 216945 at 15;

*Shankar v. Fairview Ave. Props. LLC,* 2023 U.S. Dist. LEXIS 216956 at 15-16; *Chen v. Chojnacki,* 2023 U.S. Dist. LEXIS 216948 at 15-16; *Sor v. TCF Nat'l Holdings, Inc.*, 2023 U.S. Dist. LEXIS 216947 at 12-13; *Said v. Chojnacki,* 2023 U.S. Dist. LEXIS 216942 at 14; *Hui v. Chojnacki,* 2023 U.S. Dist. LEXIS 216950 at 15; *Stafford v. Chojnacki,* 2023 U.S. Dist. LEXIS 216949 at 14; *Michel v. Chojnacki,* 2023 U.S. Dist. 216954 at 14-15; *Abbas v. Page St. Props. LLC*, 2023 U.S. Dist. LEXIS 216943 at 13.

> This Court further stated:
>
> "[i]t is worth noting that the complaints in the ten related cases pending before this Court—all describing similar schemes to defraud other plaintiffs by the same or similar defendants—give [Plaintiffs'] claims a plausibility boost." *See Id.* at 12; *quoting Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) ("It is appropriate to accord limited corroborative weight to allegations in another's lawsuit.").

This Court emphasized that Plaintiffs "stated a RICO Claim and the Court need not invent arguments for Defendants." *See Id.* at 25. As this Court found that if Plaintiffs prove their factual allegations, the requirements of RICO would be satisfied, Plaintiffs can show a likelihood of success on the merits by establishing a "better than negligible" chance of proving the factual allegations of the Complaint. *See Domanus,* 2012 U.S. Dist. LEXIS 51941 at Ty, Inc., 237 F.3d at 897.

### B. Extensive Evidence Supports Plaintiffs' Factual Allegations

There is extensive evidence in support of Plaintiffs' claims. Consistent with the "likelihood of success" standard, this Motion focuses on only key, representative transactions relating to Defendants' fraud. Defendants dissolved party Defendants, rendering them insolvent during these proceedings; took cash from an existing party Defendant, purchased real estate in the name of another party Defendant; then transferred this party Defendant's real estate to newly formed "non-Defendant entities" controlled by the Defendants for zero

7

consideration. Defendant Mikosz removed her name from her house. Christian Chase, of Defendant Chase Real Estate, encumbered real estate. Defendants Chojnacki, Rixer, and EJ caused property owned by them to be sold, liquidating approximately $1,500,000 in assets owned and/or controlled by them. Defendants Long and TCF encumbered their property at 4721 Midlothian Turnpike, Crestwood by mortgaging it for cash and to remove any equity. Plaintiffs have evidence that Defendants have continued to solicit Plaintiffs while these matters have been pending. This evidence, along with the allegations in Plaintiffs' Complaint, show that Defendants intend to continue to perpetuate their fraudulent actions, to the great injury to both the public as well as to Plaintiffs.

### 1. Defendants Fraudulently Dissolved or Terminated Solvent Party Defendants During These Proceedings

Defendants fraudulently dissolved or terminated Party Defendants[2] rendering them insolvent as will be described below.

#### a. Defendant First National

Defendant First National was owned and controlled by Defendant Long. Its registered agent was Defendant Midwest, which is owned and controlled by Defendants Irwin and Chojnacki. Defendants' banking records show that Long was a signatory on the First National account and that at all relevant time periods, it was solvent with significant cash assets. These banking records also show that the parties regularly moved funds between Defendants First National (Long), 1st Midwest (Murphy), Illinois Assets (Chojnacki, Rixer, and Chojnacki's mother, Iwona), Mainstreet (Chojnacki and Rixer), EJ Investment Group, Inc. ("EJ") (Chojnacki and Rixer), CK Developers (David, Kevin, and Christopher Brandonisio), and Five Star

---

[2] Defendants in these related proceedings, 1630 N 1 LLC, 2118 Blue Island LLC, and Page Street Properties LLC were dissolved prior to file date of these actions.

(Mikosz). Defendant Long regularly used the First National bank account to pay her personal expenses as well as the school tuition for her and Defendant Chojnacki's, children. On December 20, 2024, without notice, Defendant First National was dissolved, rendering it insolvent.

### b. Defendant Mainstreet

Defendant Mainstreet was owned and controlled by Defendants Chojnacki and Rixer. Defendant EJ (also owned and controlled by Chojnacki and Rixer) was the Manager of Mainstreet. Mainstreet's banking records show that Chojnacki, Rixer, and Chojnacki's mother, Iwona, were signatories. The bank records show that funds were moved between Mainstreet and accounts for Defendants Chase, TCF (Long), Illinois Assets (Chojnacki and Rixer), First National (Long) and EJ (Chojnacki and Rixer). On April 11, 2024, Mainstreet was terminated, rendering it insolvent.

### c. Defendant 1st Midwest Financial, Inc.

Defendant 1st Midwest was an Illinois Corporation owned and controlled by Defendant Murphy. The Registered Agent for 1st Midwest was Defendant Midwest (Chojnacki and Irwin). Banking records for 1st Midwest show that Defendant Murphy was the signatory on that account and that it maintained a substantial balance. Money was continually moved between Defendant 1st Midwest (Murphy) and accounts for Defendant First National (Long) and Lakeland (Murzyn). On July 12, 2024, Defendant 1st Midwest was dissolved, rendering it insolvent.

### d. Defendant TCF National Holdings, Inc.

Defendant TCF was a Delaware Corporation owned and controlled by Defendant Long. Its Registered Agent is Defendant Midwest (Chojnacki and Irwin). Banking records for TCF show that Long was the signatory on the account and that it had a substantial bank balance. These records show that funds were regularly moved between it and accounts for Defendants First

9

National (Long), Deodar (Chojnacki and Rixer), EJ Investment Group, Inc. (Chojnacki and Rixer), Mon Ami TCF ("Mon Ami") (Long), Mainstreet (Chojnacki Rixer), Illinois Assets (Chojnacki, Rixer and Chojnacki's mother, Iwona) and Lakeland (Murzyn). On July 12, 2024, Defendant TCF was dissolved, rendering it insolvent.

e. **Defendant BMO Property Management, Inc.**

Defendant BMO was an Illinois Corporation owned and controlled by Defendant David Brandonisio. Banking records for Defendant BMO show that the signatory on its account was David Brandonisio and the account had a substantial balance. Money was moved regularly between it and Defendants First National (Long), Rixer personally, and National Asset Management, Inc. – an entity controlled by Brandonisio's brothers, Christopher and Kevin (owners of Defendant CK Developers). On June 9, 2023, Defendant BMO was dissolved, rendering it insolvent.

f. **Defendant Fairview Avenue Properties LLC**

Defendant Fairview was an Illinois Limited Liability Company solely owned and managed by Defendant Mon Ami, which is owned by Defendant Long and Defendant Anand Sheth. On May 10, 2024, while this action was pending, Defendant Fairview involuntarily dissolved, and is now insolvent.

g. **Defendant Torrence 2 LLC**

Defendant Torrence 2 LLC (Torrence) was an Illinois Limited Liability Company owned by Defendant Illinois Assets LLC, which is owned and controlled by Defendants Chojnacki and Rixer. On February 28, 2023, Defendant Torrence was terminated, rendering it insolvent.

h. **Defendant Deodar, Evergreen & Butternut EC LLC**

Defendant Deodar controlled by Defendant Chojnacki. Bank records show that

10

Defendant Chojnacki's mother was the signatory on its bank account, which maintained a positive cash balance. Defendant Deodar was dissolved by Defendant Rixer in October, 2024.

### i. Defendant FNBO Property Management LLC

Defendant FNBO was owned and controlled by Defendant Laurena Mikosz's husband, Lukasz Mikosz. Bank records show that Defendant FNBO had a positive bank balance and that Lukasz Mikosz was signatory on the bank account. FNBO was terminated while these matters were pending, on May 15, 2023.

### 2. Defendants fraudulently conveyed, dissipated, and/or encumbered assets

Defendants have fraudulently conveyed, dissipated, or encumbered their assets while these matters were pending.

#### a. Cunat Court

On October 23, 2023, while these proceedings were pending, Defendants Irwin and Chojnacki wired $114,004.57 out of the Defendant Midwest bank account and purchased 1363 Cunat, Lake in the Hills, Illinois in the name of Defendant 1st Midwest (Murphy). Then, on February 6, 2024, Defendant Long organized Asset Properties LLC, a Wyoming Limited Liability Company. On February 13, 2024, Defendant Irwin organized Cunat Court LLC, an Illinois Limited Liability Company managed by Defendant Long's "Asset Properties LLC." Then, on March 05, 2024, Defendant Irwin prepared a deed transferring title of 1363 Cunat, Lake in the Hills, Illinois for zero consideration from Defendant 1st Midwest to Defendant Long's Cunat Court LLC. On July 12, 2024, Defendant 1st Midwest was dissolved.

#### b. Defendants Long and TCF's Crest Cove LLC (4721 Midlothian Turnpike, Crestwood)

While these matters have been pending, Defendants Long and TCF encumbered their property at 4721 Midlothian Turnpike, Crestwood by mortgaging it for cash and to remove any equity. Specifically, the property was owned by Crest Cove LLC, which is managed by Defendant TCF and owned by Long. Long and TCF's Crest Cove LLC acquired the commercial property in June of 2021 for the price of $1,572,000.00. At the time of the purchase of the property, Long/TCF/Crest Cove entered into the purchase money mortgage in the amount of $1,179,000.00. On July 21, 2023, approximately 6 months after these matters began, Defendant Crest Cove (Defendants Long and TCF) took out a $2,800,000 mortgage on the property, rendering it devoid of equity.

    **c.    Defendants Chojnacki, Rixer, and EJ's 65 W Webster LLC (65 West Webster, Joliet)**

While these matters have been pending, Defendants Chojnacki, Rixer, and EJ caused property owned by them to be sold, liquidating approximately $1,500,000 in assets owned and/or controlled by them. Specifically, 65 W Webster LLC is a Delaware LLC that is affiliated with, owned by, or controlled by Defendants Chojnacki, Rixer, and/or their entity Defendant EJ. Defendants Chojnacki, Rixer, and EJ's entity, 65 W Webster LLC, purchased the commercial property located at 65 West Webster, in Joliet, Illinois in June of 2020 for $630,000.00, apparently for cash.

On January 30, 2024, Defendant Chojnacki caused the property to be sold for $1,500,000. 65 W Webster LLC has since been terminated. Accordingly, the sale effectively liquidated $1,500,000 of assets belonging partially or completely to Defendants Chojnacki, Rixer, and EJ.

    **3.    Defendant Irwin made misrepresentations to Counsel and this Court regarding her misuse of Plaintiff Malik's escrow funds**

Defendant Irwin deposited Plaintiff Malik's escrow funds in the Defendant Midwest Title bank account, of which non attorney Defendant Chojnacki is also a signatory, and then made false statements to counsel and this Court. Bank records show that this bank account is used to fund Defendants' business operations, including paying attorney fees, paying taxes and bar association dues, paying other miscellaneous expenses, and funding the October 2023 purchase of real estate in the name of Defendant 1st Midwest Financial (ultimately transferred to Defendant Long's Cunat Court LLC for zero consideration). Plaintiffs have a F.R.C.P. 11 Motion pending regarding these misrepresentations.

**4. Defendant Mikosz removed herself from her house title and Christian Chase, sole owner of Defendant Chase Real Estate LLC substantially encumbered his real estate during these proceedings.**

While these proceedings were pending, Defendant Mikosz has removed herself from the title of her house. Christian Chase, sole owner of Defendant Chase Real Estate LLC substantially encumbered his real estate.

**5. Defendants have continued to solicit unwitting victims during the pendency of this action.**

Plaintiff Lin was being lured by Defendant Mikosz and the other Defendants as late as April 14, 2023, while these matters were pending. S*ee Lin v. Chase Real Estate LLC, et al.,* 24 cv 03725; *see also Exhibit 1.*

**V. PLAINTIFFS AND ALL RESPECTIVE VICTIMS ARE LIKELY TO SUFFER IRREPARABLE HARM IF INJUNCTIVE RELIEF IS NOT GRANTED**

The totality of Defendants' actions above supports the allegations in Plaintiffs' Complaint and supports the injunctive relief sought. Considering the conduct of the Defendants in this case, there is a high likelihood that, absent a preliminary injunction, the Defendants would

engage in further acts designed to defraud not only the Plaintiffs, but the public as well. *See Caterpillar,* 1994 U.S. Dist. LEXIS 20291 at 22. This Court can use its inherent and statutory powers to stop and prevent Defendants from further engaging in further fraudulent activity. *Domanus,* 2012 U.S. Dist. LEXIS 51941 at 11.

It is noteworthy that, since this Court issued its rulings in ten of the cases denying Defendants' Motions to Dismiss, five additional Plaintiffs have come forward with new cases. Additionally, the allegations in Plaintiff Lin's Complaint, and the attached text message exhibit, shows us that even when the Defendants were appearing in this Court, they were still actively engaging in the Citipoint scam. *See Lin v. Chase Real Estate LLC,* 24 cv 03725; *see Exhibit 1.*

If Defendants are permitted to continue to engage in fraudulent conveyances and dissolutions and terminations of party defendants, and establishing new shell entities unimpeded, the Defendants will continue, as they have, in the future to use their acumen in forming multiple entities of unnecessary complexity to provide cover for even more fraudulent transactions like those which prompted this action. If the pool of plaintiffs continues to grow, then the ability of the existing victims to recover damages will be impeded. *See Caterpillar,* 1994 U.S. Dist. LEXIS 20291 at 22*; citing Federal Trade Commission v. World Travel Vacation Brokers, Inc.* 861 F.2d 1020, 1031 (7th Cir. 1988).

## VI.    THE BALANCE OF HARMS STRONGLY FAVORS PLAINTIFFS

In balancing harms, the court considers whether the threatened injury to the movant outweighs any damage the injunction may cause the opposing party. *See Amoco Prod. Co. v. Gambell,* 480 U.S. 531, 542 (1987). Allowing Defendants to carry on their activities by liquidating assets; dissolving party Defendants; transferring assets for zero consideration; encumbering assets; creating new entities to house transferred assets during these proceedings

14

will only serve to facilitate further fraudulent acts, to the detriment of both the public and to Plaintiffs. *See Domanus,* 2012 U.S. Dist. LEXIS 51941 at 10; *see also Caterpillar,* 1994 U.S. Dist. LEXIS 20291 at 49-50.

By contrast, the requested relief will prevent future fraudulent transfers that would further the purpose of the Defendants' RICO enterprise. *See Id.* It would not cause any meaningful harm to Defendants; it will only preserve the *status quo*. *See Caterpillar,* 1994 U.S. Dist. LEXIS 20291 at 23 ("the Preliminary Inunction leaves the defendants in possession of their property and merely establishes controls to prevent fraudulent transfer of assets.").

WHEREFORE, Plaintiffs seek an Injunction containing the following provisions:

1. That until further order of court all Persons Bound by the injunction are

   a. enjoined from transferring, disposing, liquidating real property;

   b. enjoined from transferring, disposing, dissipating cash or cash equivalents except for in the normal course of business;

   c. enjoined from dissolving, cancelling, or allowing any entity to dissolve, go into bad standing, or otherwise lapse;

   d. ordered to provide to the court an accounting of all proceeds realized from the improper disposition of assets, including the dissolved or terminated entities described herein, closed bank accounts described herein, and equity lines and/or mortgages and/or other encumbrances taken out on the real estate described herein; and proceeds from the sale of real estate described herein.

2. The Persons Bound shall be defined as:

   a. All Party Defendants;

   b. The Party Defendants' agents, officers, servants, employees, and attorneys;

   c. Any other person in active concert or participation with anyone described in Sections 2(a.) and 2(b.) above.

15

/s/ Carmen Gaspero
/s/ Lisa Gaspero
Carmen A. Gaspero
Lisa M. Gaspero
GASPERO & GASPERO ATTORNEYS AT LAW, P.C.
2001 Butterfield Rd., Suite 1022
Downers Grove, IL 60515
(630) 687-9700
carmen@gasperolaw.com
lisa@gasperolaw.com
*Counsel for all Plaintiffs*

# CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on January 10, 2025 a true and correct copy of the foregoing was electronically filed by CM/ECF, which caused notice to be sent to all counsel of record.

By: ___/s/ Lisa Gaspero_____

/s/ Carmen Gaspero
/s/ Lisa Gaspero
Carmen A. Gaspero
Lisa M. Gaspero
GASPERO & GASPERO ATTORNEYS AT LAW, P.C.
2001 Butterfield Rd., Suite 1022
Downers Grove, IL 60515
(630) 687-9700
carmen@gasperolaw.com
lisa@gasperolaw.com
*Counsel for all Plaintiffs*